O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| **CATHERINE E. AVILEZ, ET AL.,** | **Case No.: SA CV 11-0493-DOC (RZx)** |
| **Plaintiff,** | |
| **vs.** | |
| | **ORDER RE: MOTIONS FOR** |
| **PINKERTON GOVERNMENT SERVICES, INC.,** | **SUMMARY JUDGMENT** |
| **Defendant.** | **[135] [136]** |

Before the Court are Plainitff Catherine E. Avilez's ("Plaintiff" or "Avilez") Motion for Partial Summary Judgment ("Plaintiff's Motion") (Dkt. 135) and Defendant Securitas Critical Infrastructure Services, Inc.'s[1] ("Defendant" or "SCIS") Motion for Summary Judgment and/or Partial Summary Judgment ("Defendant's Motion") (Dkt. 136).

## I.      Facts

This case arises from alleged violations of California employment law. Avilez, who worked as a security guard for SCIS, has brought suit against SCIS on behalf of herself and the class of others similarly situated for alleged violations of: (1) California Labor Code § 226.7 (meal periods); (2) California Labor Code § 226 (recordkeeping); (3) Business and Professions Code §§ 17200, *et seq.* (Unfair Business Practices); and (4) the Private Attorneys General Act, Labor Code §§ 2698, *et seq.* ("PAGA"). *See generally* SAC (Dkt. 23).[2] Generally, Plaintiff alleges that Defendant required its security guard employees to remain on duty during meal periods in violation of California law. Plaintiff asserts the remedy for this violation is an additional premium wage and that Defendant's failure to record this additional premium wage resulted in inaccuracies in employees' wage statements.

Defendant is in the business of providing security officers to various clientele businesses. Plaintiff's Statement of Undisputed Facts and Conclusions of Law ("Plaintiff's SUF") (Dkt. 135-2) No. 1. SCIS employed Avilez as a security guard from October 14, 2001 to around January 29, 2011. Defendant's Statement of Uncontroverted Facts and Conclusions of Law ("Defendant's SUF") (Dkt. 136-5) No. 3.

Avilez and other class members signed a written "Agreement for On-Duty Meal Periods." Defendant's Statement of Genuine Dispute of Material Facts and Additional Undisputed Facts ("Defendant's SGD") (Dkt. 139-2) No. 13. Specifically, Avilez signed two

---

[1] SCIS was formerly known as Pinkerton Government Services, Inc.

[2] The parties do not dispute that the relevant time period for Avilez's claims for Labor Code § 226.7, Labor Code § 226, and Business and Professions Code § 17200 is September 17, 2009 to the present. Nor do the parties dispute that the statutory time period for Avilez's PAGA claim is February 24, 2010 to the present. Defendant's Statement of Uncontroverted Facts and Conclusions of Law ("Defendant's SUF") (Dkt. 135-5) Nos. 4, 5.

such agreements, both dated May 13, 2008. Def. SUF No. 6.[3] The Agreement for On-Duty Meal Periods provides, in relevant part:

>Pinkerton Government Services, Inc. ("PGS") and Employee agree that due to the nature of Employee's work as a Security Officer (primarily working alone and in remote locations, and in public safety sensitive positions), Employee may be prevented from leaving the client site during an Employee's meal breaks. Employee will have the opportunity to have a meal and other break(s), but depending on Employee's work assignment (as a first responder and emergency response personnel), Employee may not be able to physically leave the client property. Accordingly, Employee agrees to have paid-on-duty meal periods. . . . I, Employee, . . . understand that I may revoke this Agreement in writing, at any time, without penalty. I understand that if I do decide to revoke this Agreement, I may be reassigned to another available client site that provides for off-duty, unpaid, meal breaks. PGS management has advised me that I will not be terminated or subject to any negative treatment or retaliation if I decline to sign or revoke this Agreement for On-Duty Meal Periods.

Def. SGD No. 14. Avilez does not dispute she did not revoke the agreements nor that she took paid on-duty meal periods during the relevant time period of her employment with SCIS, but rather argues the agreements are illegal and against public policy. *See* Def. SUF Nos. 8, 9.

During her employment with SCIS, Avilez was assigned to three different clients at four different sites: (1) Raytheon, (2) Pacific Place/Northrop Grumman, and (3) Vought Aircraft Industries, Inc. ("Vought"). *Id.* No. 10. Because Avilez's work at Raytheon precedes the relevant period in this case, only Avilez's assignments at Pacific Place/Northrop Grumman and Vought Aircraft Industries, Inc. are pertinent here.

Avilez worked a graveyard shift at the Pacific Place/Northrop Grumman site in San Pedro, California, which ran from 10:00 p.m. to 6:00 a.m. *Id.* No. 12. At that site, one other

---

[3] Plaintiff does not dispute she signed two Agreements for On-Duty Meal Periods, but rather argues the agreements are illegal and against public policy.

security guard was on duty during the same shift as Avilez. *Id.* No. 13. Avilez's duties at the Pacific Place/Northrop Grumman site included patrolling the inside and outside of the building and the parking lot, checking the doors and alarm system, answering the phone at the security desk, monitoring security cameras, and responding to alarms and emergencies. *Id.* No. 14. The other security officer on duty during Avilez's shift patrolled a different part of the site than Avilez, but still patrolled the same building. *Id.* No. 16. While one security officer was on patrol, the other worked the desk. *Id.* No. 17. A guard was required to be at the desk at all times. *Id.*

Avilez next worked at the Vought site in Los Angeles, California. *Id.* No. 19. She also worked the graveyard shift there, which was from 10:00 p.m. to 6:00 a.m., five days per week. *Id.* Initially, three security guards were assigned to the Vought site during Avilez's shift. When there were three guards, one guard patrolled the premises, one worked at the entry gate, and one worked at the console post observing camera monitors. *Id.* No. 20. Avilez's duties involved a combination of being stationed at the gate and patrolling the premises. *Id.* No. 21. When Avilez was stationed at the gate, she was by herself and her responsibilities including checking people in and out of the gate by name badge and informing certain non-employees they needed to return when the gate was open. *Id.* No. 22. At times, Avilez's responsibilities also included checking tankers into the facility for deliveries and other business. *Id.* No. 23. While Avilez stayed at the gate, another security guard patrolled; when that guard returned from patrol, the two guards switched positions. *Id.* No. 25. Avilez's patrols of the Vought site took about two hours, and she conducted more than one patrol per shift. *Id.* No. 27. According to Avilez, the purpose of the patrols was to "[m]ake certain place [sic] is locked and secure," and that there were no fires. *Id.* No. 28. Avilez ate her meals while she performed her patrol duties at the Vought site. *Id.* No. 30. At the console post (another guard's responsibility), there were monitors showing what security cameras captured – namely, the factory and the outside perimeter. *Id.* No. 32.

Around November 29, 2010, Vought eliminated the security guard position located at the gate during the majority of the graveyard shift. *Id.* No. 33. The number of security guards

was thereby reduced from three to two. *Id.* One security guard was still stationed at the console post to observe the camera monitors. *Id.* No. 34. As a result of the reduction in security guards, Avilez become responsible for an increased number of patrols. *Id.* No. 35. She was also responsible for opening and attending to the gate from 4:00 a.m. until her shift ended at 6:00 a.m. During the security guards' shifts, "the guards had time to eat, watch TV, read a book, [and] sit on the couch." *Id.* No. 38.

## II.   Procedural History

Plaintiff brought suit in Orange County Superior Court on February 28, 2011. Notice of Removal (Dkt. 1). Defendant removed the case to federal court on March 30, 2011. *Id.* On October 9, 2012, the Court granted Plaintiff's Motion for Class Certification ("Class Certification Order") (Dkt. 75). In the Class Certification Order, the Court certified the following classes:

> (1) "all DEFENDANTS' past and present California employees who worked more than 5 hours in any work shift as a Security Guard from September 17, 2009 through the present" ("Meal Break Class " or "Class 1 "); and
>
> (2) "all DEFENDANTS['] past and present California employees who worked as Security Guards from September 17, 2009 through the present who received itemized wage statements" ("Wage Statement Class " or "Class 2 ").

*Id.* at 2–3, 42. The Court also certified the following subclasses:

> (a) "all DEFENDANTS' past and present California employees who worked more than 5 hours in any 'on-duty meal break' work shift as a Security Guard from September 17, 2009 through the present" ("Meal Break Subclass " or "Subclass (a) ");
>
> (b) "all DEFENDANTS['] past and present California employees who worked as Security Guards in any 'on-duty meal break' work shift from

September 17, 2009 through the present who received itemized wage

statements" ("Wage Statement Subclass" or "Subclass (b)");

(c) "all DEFENDANTS' past and present California employees who

worked more than 5 hours in any 'on-duty meal break' work shift as a

Security Guard from September 17, 2009 through the present and who

did not sign any Dispute Resolution Agreement containing a Class

Action Waiver" ("No-Signed-Waiver Subclass" or "Subclass (c)"); and

(d) "all DEFENDANTS' past and present California employees who

worked more than 5 hours in any 'on-duty meal break' work shift as a

Security Guard, and was presented with and signed a Dispute

Resolution Agreement containing a Class Action Waiver, at any time

between September 17, 2009 through the date each respective employee

signed said agreement" ("Signed-Waiver Subclass" or "Subclass (d)").

*Id.*

Defendant petitioned the Ninth Circuit for leave to appeal the Class Certification Order, and on January 23, 2013, the Ninth Circuit granted that petition (Dkt. 98). On February 4, 2013, the Court stayed the proceedings pending the appeal. *See* Order Re: Joint Stipulation and Motion for a Stay of District Court Proceedings Pending Appeal (Dkt. 103).

On March 9, 2015, the Ninth Circuit issued a Memorandum Order vacating the Court's Class Certification Order and remanding for entry of a revised class certification order ("Memorandum Order") (Dkt. 124). In the Memorandum Order, the Ninth Circuit held that the Court abused its discretion

to the extent it certified classes and subclasses that include employers who

signed class action waivers. Avilez's arbitration agreement does not contain

a class action waiver and counsel did not dispute that those who signed

such waivers have potential defenses that Avilez would be unable to argue

on their behalf. To the extent the classes and subclasses include individuals

who signed class action waivers, Avilez is not an adequate representative,

Fed. R. Civ. P. 23(a)(4), and her claim lacks typicality, Fed. R. Civ. P. 23(a)(3).

Memorandum Order at 2. However, the Ninth Circuit also explained:

> If individuals who signed class action waivers are excluded from the "Meal Break" and "Wage Statement" subclasses, then these subclasses, along with the "No-Signed-Waiver" subclass, would satisfy Federal Rules of Civil Procedure 23(a)(1)–(4). We need not decide whether these subclasses, as modified, would satisfy the predominance requirement of Rule 23(b)(3). On remand, the district court shall certify a class under Federal Rule of Civil Procedure 23(c)(4) on the issue of whether there exists a prima facie case for liability. If a prima facie case exists, the district court may proceed to entertain Pinkerton's affirmative defenses and cull the class accordingly.

*Id.* at 2–3. In other words, "[b]ecause the Meal Break and Wage Statement subclasses include employees who signed class action waivers," the Ninth Circuit vacated the Court's Class Certification Order and directed the Court to enter a new certification order consistent with the Ninth Circuit's decision. *Id.* at 3. On April 1, 2015, the Ninth Circuit issued a Mandate effectuating the March 9, 2015 Memorandum Order ("Mandate") (Dkt. 125).

Following the Mandate, the Court certified the following subclasses pursuant to Federal Rule of Civil Procedure 23(c)(4) on the issue of whether there exists a prima facie case for liability:

> (a) all DEFENDANTS' past and present California employees who worked more than 5 hours in any 'on-duty meal break' work shift as a Security Guard from September 17, 2009 through the present whose employment was not subject to the Dispute Resolution Agreement containing a Class Action Waiver ("Meal Break Subclass" or "Subclass (a)"); and
>
> (b) all DEFENDANTS' past and present California employees who worked as Security Guards in any 'on-duty meal break' work shift from September 17, 2009 through the present whose employment was not

subject to the Dispute Resolution Agreement containing a Class Action Waiver ("Wage Statement Subclass" or "Subclass (b)").

Joint Modified Order Re: Class Certification (Dkt. 129).

On September 8, 2015, Plaintiff filed her Motion for Partial Summary Judgment. That same day, Defendant filed its Motion for Summary Judgment and/or Partial Summary Judgment. On September 21, 2015, each party filed an opposition (Dkts. 138, 139). On September 28, 2015, each party replied (Dkts. 140, 141).

## III.   Legal Standard

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is to be granted cautiously, with due respect for a party's right to have its factually grounded claims and defenses tried to a jury. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1992); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Celotex*, 477 U.S. at 323. When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out that the non-moving party has failed to present any genuine issue of material fact as to an essential element of its case. *See Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

Once the moving party meets its burden, the burden shifts to the opposing party to set out specific material facts showing a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at 248-49. A "material fact" is one which "might affect the outcome of the suit under the governing law . . . ." *Id.* at 248. A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific, admissible evidence identifying the basis for the dispute. *Id.* The court need not "comb the record" looking

for other evidence; it is only required to consider evidence set forth in the moving and opposing papers and the portions of the record cited therein. Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Liberty Lobby*, 477 U.S. at 252.

The Court will first consider Plaintiff's Motion for Partial Summary Judgment. Then the Court will turn to Defendant's Motion for Summary Judgment and/or Partial Summary Judgment.

## IV.     Plaintiff's Motion for Partial Summary Judgment

Plaintiff asks the Court to grant summary judgment on the grounds that Plaintiff has established a class-wide prima facie violation of California Labor Code Section 226.7. Plaintiff argues that a prima facie case exists because Defendant implemented a policy, practice, and procedure of mandating that all of its security officer employees take on-duty meal breaks rather than off-duty meal breaks. Pl. Mot. at 7.

### A.  Legal Standard – California Labor Code § 226.7 and Industrial Welfare Commission Wage Order No. 4-2001

California requires employers to provide meal breaks to employees in compliance with wage orders issued by the Industrial Welfare Commission ("IWC").[4] Specifically, California Labor Code Section 226.7 states, in pertinent part:

> (b) An employer shall not require an employee to work during a meal or rest or recovery period mandated pursuant to an applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health.

---

[4] As the Court explained in the Class Certification Order, "the IWC is the state agency empowered to formulate regulations (known as wage orders) governing employment in the State of California." Class Certification Order at 15 n.7 (quoting *Tidewater Marine W., Inc. v. Bradshaw*, 14 Cal. 4th 557, 561 (1996)) (internal quotation marks omitted). Today, California wage and hour claims "are governed by two complementary and occasionally overlapping sources of authority: the provisions of the [California] Labor Code, enacted by the Legislature, and a series of 18 wage orders, adopted by the IWC." *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1026 (2012). Wage orders concerning meal and rest period requirements "must be interpreted in the manner that best effectuates th[e] protective intent" of the legislation, which is a "remedial worker protection framework." *Id.* at 1027.

Further, if an employer fails to provide a meal break to an employee in accordance with the applicable IWC wage order, the employer must pay the employee one additional hour of pay for each work day that the meal period is not provided. Indeed, the Labor Code states:

> (c) If an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law, including but not limited to, an applicable statute or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided.

Cal. Lab Code. § 226.7(c).

The relevant wage order for the security guard industry, IWC Wage Order No. 4-2001 Section 11 provides: [5]

> (A) No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and the employee. Unless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an "on duty" meal period and counted as time worked. An "on duty" meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to. The written agreement

---

[5] 8 Cal. Code Regs § 11090 is commonly referred to as IWC Wage Order No. 4-2001. Class Certification Order at 16 n.8 (citing *Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625, 635 (S.D. 2010)). Wage Order No. 4-2001 "regulates the wages, hours, and working conditions for 'professional, technical, clerical, mechanical, and similar occupations.'" *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 n.5 (quoting Cal. Code. Regs. Tit.8 § 11040). The wage order applies to the security guard industry. *See id.* at 958. (applying Wage Order No. 4-2001 to the security guard industry).

shall state that the employee may, in writing, revoke the agreement at any time.[6]

Put simply, a prima facie case of California Labor Code Section 226.7 and Wage Order No. 4-2001 Section 11 violations requires Plaintiff to establish Defendant failed to provide the requisite meal breaks. *Cf. Kirby v. Immoos Fire Prot., Inc.*, 53 Cal. 4th 1244, 1256–57 (2012) ("The failure to provide required meal . . . breaks is what triggers a violation of [California Labor Code] section 226.7.").

However, as set out in Wage Order No. 4-2001 Section 11(A), no violation of the Labor Code and Wage Order occurs if the employer can prove it provided its employees with lawful *on-duty* meal periods. Indeed, as the Court concluded in the Class Certification Order, the defendant employer bears the burden of establishing that it satisfies statutory exception in Wage Order No. 4-2001 Section 11(A) allowing for on-duty meal breaks. *See* Class Certification Order at 17; *see also Abdullah*, 731 F.3d at 964 (characterizing the "nature of the work" exception as a "defense"); *Amalgamated Transit Union Local 1309, AFL-CIO v. Laidlaw Transit Servs., Inc.*, No. 05CV1199-IEG-CAB, 2009 WL 2448430, at *4 (S.D. Cal. Aug. 10, 2009) ("*Laidlaw*") (stating the employer must prove the three elements of the statutory exception to establish the validity of the meal break agreements); *cf. Brewer v. Gen. Nutrition Corp.*, No. 11-CV-3587 YGR, 2014 WL 5877695, at *7 (N.D. Cal. Nov. 12, 2014) ("The Ninth Circuit, interpreting California law, has held that the 'on-duty' meal period is a limited alternative to the off-duty meal period requirement, and can only be used by employers in the narrowest of circumstances, based upon the 'nature of the work.'") (citing *Abdullah*, 731 F.3d at 959).

## B. Discussion

### 1. Plaintiff's Meal Period Claim Under California Labor Code § 226.7 and Wage Order No. 4-2001

As a preliminary matter, the Court must address Avilez's contention that the Court, in its Class Certification Order, already ruled Plaintiff established a prima facie case for violation of

---

[6] "The IWC's wage orders are to be accorded the same dignity as statutes." *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1027 (2012).

Labor Code Section 226.7. Pl. Mot. at 5. The Court disagrees that it already held a prima facie case exists.

In the Class Certification Order, the Court found a common question of law and fact existed regarding the putative Meal Break Class's prima facie case. Class Certification Order at 17. The Court stated, "[t]he prima facie case regarding the Meal Break Class's claim can be resolved by the following common question: Did Defendant's policy and practice of requiring that each Security Guard take only an 'on-the-job meal period' result in Defendant failing to provide off-duty meal breaks, thus violating California Labor Code 226.7 and Wage Order No. 4-2001 § 11?" *Id.* at 17–18 (footnote omitted). Then, the Court explained "[t]he common contention shared by Plaintiff and all putative class members is that Defendant violated this California law because Defendant's policy requiring that Security Guards take only on-duty breaks resulted in Defendant's practice of failing to provide off-duty meal periods." *Id.* at 18. The Court concluded Plaintiff established "that this question was susceptible to common proof by identifying evidence to establish the prima facie case." *Id.* With respect to predominance under Rule 23(b)(3), the Court ruled: "Because Plaintiff has shown that the putative class's prima facie case is susceptible to common proof, she has shown that 'common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication,' which is all that is necessary to meet the predominance requirement of Rule 23(b)(3)." *Id. at* 30–31.

The Court's conclusion that Plaintiff proved the "question was susceptible to common proof" by pointing to evidence establishing a prima facie case was not a final determination that she established her prima facie case on the merits. In *Wal-Mart Stores, Inc. v. Dukes*, __ U.S. __, 131 S. Ct. 2541 (2011) ("*Dukes*"), the Supreme Court explained that, when the Court engages in a "rigorous analysis" to evaluate whether a claim meets the requirements of Rule 23, "that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim." *Id.* at 2551 (quoting *Gen. Telephone Co. of Sw. v. Falcon*, 451 U.S. 147, 161 (1982)).[7]

---

[7] Specific to the facts at issue in *Dukes*, the Court explained that "proof of commonality necessarily overlaps with respondents' merits contention that Wal-Mart engages in a pattern or practice of discrimination." *Dukes*, 131 S. C.t at 2552 (emphasis omitted).

As in *Dukes*, to resolve the question of whether certification was proper here, the Court needed to *touch on* aspects of the merits. However, the conclusions drawn in the Class Certification Order do not equate to a final adjudication of the prima facie case on the merits. *See Amgen, Inc. v. Connecticut Ret. Plans & Trust Funds*, __ U.S. __, 133 S. Ct. 1184, 1194–95 ("Although we have cautioned that a court's class-certification analysis must be 'rigorous' and 'may entail some overlap with the merits of the plaintiff's underlying claim,' Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent – but only to the extent – that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.") (citation omitted).

The Ninth Circuit's Memorandum Order further supports this conclusion. In the Memorandum Order, the Ninth Circuits stated, "[o]n remand, the district court shall certify a class under Federal Rule of Civil Procedure 23(c)(4) on the issue whether there exists a prima facie case for liability." Memorandum Order at 3. By directing the district court to certify class on the issue of whether a prima facie case exists, the Ninth Circuit indicated that no merits determination had been made.

Accordingly, it is now appropriate for the Court to determine whether summary judgment should be granted on the grounds that Plaintiff has established a class-wide prima facie case for violation of Labor Code Section 226.7. As set out above, under California law, "[a]n employer shall not require an employee to work during a meal . . . period mandated pursuant to an applicable statute . . . or order of the Industrial Welfare Commission." Cal. Lab. Code § 226.7(b). And, Wage Order No. 4-2001, "in turn, guarantees certain employees a 30-minute meal period for every five hours of work." *Abdullah*, 731 F.3d at 958. "[A]n employer's obligation is to relieve its employee of all duty" during this break. *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1017 (2012). If not, the meal period is considered on-duty and counts as time worked. Unless the employer can prove it satisfies the three mandatory conditions that apply to on-duty meal periods, the on-duty meal period is unlawful.

An employer's liability "may be premised upon a uniform policy adopted by an employer which violates California wage and hour laws." *Medlock v. Taco Bell Corp.*, No.

1:07-CV-01314-SAB, 2014 WL 6865560, at *4 (E.D. Cal. Nov. 14, 2014). However, "in the context of a summary judgment motion, Plaintiffs must also demonstrate that there is no genuine dispute of fact pertaining to the uniform policy." *Id.* Here, Plaintiff asserts "the undisputed evidence clearly supports Plaintiff's argument that a prima facie case exists in that Defendant implemented a policy, practice and procedure of mandating that all of its security officer employees not be allowed to take off-duty meal breaks, but rather, are required to take on-duty meal breaks." Pl. Mot. at 7.

In support of her argument that Defendant has and enforces a policy requiring on-duty meal breaks, Plaintiff points to the deposition testimony of Michael Kemppainen ("Kemppainen"), SCIS's former Vice President for the West Area. When asked whether "every security officer's required to sign an on-duty meal agreement," Kemppainen responded, "[y]es." Declaration of Larry W. Lee ("Lee Decl.") (Dkt. 135-1) Ex. A ("Deposition of Michael Kemppainen") at 41:15–19. Later in his deposition, Kemppainen reiterated, "we have everyone sign the meal agreement." *Id.* at 74:5–6. And, when asked what percentage of employees "actually worked on a post that was an on-duty meal break post" he responded, "in excess of 90 percent easily." *Id.* at 74:7–75:7. Further, although the on-duty meal break agreement states employees may revoke the agreement at any time, without penalty, Kemppainen stated he is "not aware of anybody ever revoking the agreement." *Id.* at 64:2–10.

Plaintiff also argues Kemppainen's deposition testimony supports her contention that employees are required eat their meals without being relieved of their job duties, thereby demonstrating employees were not provided with off-duty meal breaks. Specifically, when asked whether "the employee can't say[,] '[w]ell, I'm going to take half an hour and be off duty and go somewhere[,]'" Kemppaine responded, "[n]o, they can't do that for a meal break." *Id.* at 59:11–15.

In response to Plaintiff's arguments, Defendant emphasizes that its Agreement for On-Duty Meal Periods expressly permits a security guard to revoke the agreement, as required by Wage Order No. 4-2001. Def. Opp'n at 9. Indeed, the agreement states:

I, Employee, . . . understand that I may revoke this Agreement in writing, at any time, without penalty. I understand that if I do decide to revoke this Agreement, I may be reassigned to another available client site that provides for off-duty, unpaid, meal breaks. PGS management has advised me that I will not be terminated or subject to any negative treatment or retaliation if I decline to sign or revoke this Agreement for On-Duty Meal Periods.

The language of the agreement itself thus suggests all security guard employees are not forced or required to sign Defendant's on-duty meal period agreement, and, even if they did initially sign, they can get out of the agreement and be reassigned to a site or post with off-duty meal periods.

Kemppainen's testimony also supports Defendant's argument that security guard employees can choose not to be bound by an on-duty meal period agreement. When asked whether an employee can revoke the on-duty mean period agreement, he responded, "[a]bsolutely." Declaration of Sherry B. Shavit ("Shavit Decl.") (Dkt. 139-1) Ex. 5 ("Deposition of Michael Kemppainen") at 63:20–64:1. And, when asked whether an employee who revokes the on-duty meal period agreement is then "reassigned to another available client site that can provide for off-duty, unpaid, meal breaks" Kemppainen said, "[t]hat could happen." *Id.* at 64:2–9. Kemppainen's testimony therefore suggests the on-duty meal period agreement is not mandatory; rather, a security guard who revoked the agreement could potentially be transferred to an off-duty meal period site.

Further, there is no testimony suggesting that, despite the reassurances in the agreement, an employee would face termination or negative treatment for declining to sign or revoking the agreement. Indeed, Plaintiff has offered no testimony stating that "if an employee refuses to sign the 'on-duty meal period agreement' he or she 'won't work for us.'" *Abdullah*, 731 F.3d at 955.[8] Nor is there evidence suggesting that employees were forced to sign the agreement and

---

[8] Although *Abdullah* is a decision affirming the district court's class certification order, it is still instructive as to what is relevant to a determination on the merits.

therefore "forced to forego" their meal breaks. *See Nguyen v. Baxter Healthcare Corp.*, No.
8:10-CV-01436-CJC, 2011 WL 6018284, at *5 (C.D. Cal. Nov. 28, 2011).

Therefore, the Court concludes the language of the Agreement for On-Duty Meal
Periods and Kemppainen's testimony raise a genuine dispute as to whether Defendant has an
unlawful policy, practice, and procedure of mandating that all of its security officer employees
take on-duty meal breaks.

Plaintiff argues it is immaterial that employees may revoke the on-duty meal period
agreement because employees who were not subject to an on-duty meal agreement or who
worked at off-duty meal period sites are no longer members of the class. *See* Pl. Reply at 7–8.
That argument is unavailing. Whether employees could choose not to be bound by the on-duty
meal period agreement is relevant to whether Defendant implemented a policy and practice of
prohibiting its security guard employees from taking off-duty meal periods in violation of
California labor laws. Indeed, "where liability may be premised upon an illegal policy, on a
motion for summary judgment, Plaintiffs must . . . demonstrate the absence of a genuine
dispute regarding the existence and adoption of that illegal policy." *Medlock v. Taco Bell Corp.*,
No. 1:07-CV-01314-SAB, 2014 WL 6865560, at *4 (E.D. Cal. Nov. 14, 2014). In light of the
agreement's language and Kemppainen's testimony, the Court cannot conclude Plaintiff has
demonstrated the absence of a genuine dispute that SCIS has an unlawful policy.[9]

Accordingly, Plaintiff's Motion as to the Labor Code Section 226.7 claim is DENIED.
Summary judgment is not appropriate here because there is a genuine dispute of fact regarding
Defendant's policy on meal breaks.

### 2. Plaintiff's Labor Code § 226 Claim

As the Court stated in the Class Certification Order, "[i]f an employer violates California
Labor Code Section 226.7 by failing to provide a meal break to an employee in accordance
with Wage Order 4-2001, the employer must pay the employee one additional hour of pay –

---

[9] The Court notes that using on-duty meal period agreements is not unlawful if the employer proves the three conditions required by Wage Order No. 4-2001 for on-duty meal periods are satisfied. *See In re Taco Bell Wage & Hour Actions*, No. 1:07CV1314 LJO DLB, 2012 WL 5932833, at *10 (E.D. Cal. Nov. 27, 2012) *report and recommendation adopted sub nom. In re Taco Bell Wage & Hour*, No. CV F 07-1314 LJO DLB, 2013 WL 28074 (E.D. Cal. Jan. 2, 2013).

commonly referred to as a 'premium' – for each work day that the meal period is not provided." Class Certification Order at 20–21; *see also* Cal. Lab. Code § 226.7(B); Wage Order No. 4-2001 § 11(B). California Labor Code Section 226(a) requires employers to keep accurate records and provide itemized wage statements every pay period that include "gross wages earned" and "net wages earned." Thus, "if an employer fails to provide appropriate meal breaks – a violation of Section 226.7 – and also fails to record the premium accrued as a result of this Section 226.7 violation, the employer has not kept accurate records and so also violates Section 226(a)." *Id.* at 21 (citing *Ricaldai v. U.S. Investigations Servs., LLC*, 878 F. Supp. 2d 1038, 1047 n.4 (C.D. Cal. 2012)). Courts therefore "often refer to claims for 'inaccurate wage statements' under Section 226(a) as 'derivative of [plaintiff's meal] break claims' under 226.7." *Id.* (citing *White v. Starbucks Corp.*, 497 F. Supp. 2d 1080, 1085, 1089–90 (N.D. Cal. 2007); *Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625, 640 (S.D. Cal. 2010)).

The parties do not dispute that Labor Code Section 226 is predicated upon Plaintiff's meal break allegations. *See* Pl. Mot. at 10; Def. Opp'n at 12. Because the Court has concluded there is a genuine dispute of material fact as to Plaintiff's meal break claim, Plaintiff's motion for summary judgment as to her Labor Code Section 226 claim is likewise DENIED.

## V.    Defendant's Motion for Summary Judgment and/or Partial Summary Judgment

Defendant moves for summary judgment as to all of Plaintiff Avilez's claims.[10] Defendant asserts Avilez's claims are all based on the allegation that SCIS was required to provide her with unpaid off-duty meal periods during her employment as a security guard. Therefore, Defendant argues, her claims fail because Defendant demonstrates she was provided with *lawful on-duty* meal periods. *See* Def. Mot. at 1. Defendant also asserts Avilez's derivative claims for failure to keep required records under California Labor Code Section 226, unfair competition under Business and Professions Code Section 17200, and for civil penalties under the California Labor Code Private Attorneys General Act of 2004 ("PAGA") fail as well. *Id.* Defendant argues the PAGA claim fails for an additional reason: Avilez failed to properly

---

[10] Defendant's Motion address Plaintiff Avilez's individual claims, not the class claims.

exhaust the mandatory administrative remedies prior to pursuing civil penalties under the PAGA because her notice to the Labor and Workforce Development Agency ("LWDA") did not satisfy the requirements of Labor Code Section 2699.3. *Id.* at 1–2.

Before proceeding to the merits of the Motion, the Court must first address two threshold issues: whether the Court should grant Plaintiff's request for a continuance to address additional discovery and whether Defendant's Motion is procedurally proper.

### A.  Plaintiff's Request for a Continuance to Conduct Additional Discovery

Plaintiff Avilez requests a continuance of Defendant's Motion so she can conduct additional discovery. Pl. Opp'n at 7.

Pursuant to Federal Rule of Civil Procedure 56(d):[11]

> If a nonmovant shows by affidavit or declaration that, for specified reasons,
> it cannot present facts essential to justify its opposition, the court may:
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or take discovery; or
> (3) issue any other appropriate order.

The party seeking the continuance bears the burden of proffering facts sufficient to meet Rule 56(d)'s requirements. *See Nidds v. Schindler Elevator Corp.,* 113 F.3d 912, 921 (9th Cir. 1996)). Specifically, the requesting party must show: "(1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery, (2) the facts sought exist[,] and (3) the sought-after facts are essential to oppose summary judgment." *Patel v. U.S. Bank, N.A.*, No. 5:13-CV-00748-PSG, 2014 WL 3870388, at *4 (N.D. Cal. Aug. 6, 2014)) (quoting *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008)). "References in memoranda and declarations to a need for discovery do not qualify as motions under Rule 56[(d)]." *Brae Transp., Inc. v. Coopers & Lybrand*, 790 F.2d 1439, 1443 (9th Cir. 1986). Rather, the Rule "requires affidavits setting forth the particular facts expected from the movant's discovery." *Id.*

---

[11] In 2010, Rule 56(f) was renamed Rule 56(d). Therefore, much of the case precedent references the former Rule 56(f). *See Patel v. U.S. Bank, N.A.*, No. 5:13-CV-00748-PSG, 2014 WL 3870388, at *4 n.50 (N.D. Cal. Aug. 6, 2014)

Relief under Rule 56(d) "may be denied if 'the moving party has not acted diligently in pursing discovery before summary judgment.'" *Patel*, 2014 WL 3870388, at *4 (quoting *Meaux v. Nw. Airlines, Inc.*, 490 Fed. App'x 58, 60 (9th Cir. 2012)); *see also Brae*, 790 F.2d at 1443. And, "[f]ailure to comply with the requirements of Rule 56[(d)] is a proper ground for denying discovery and proceeding to summary judgment." *Brae*, 790 F.2d at 1443 (citation omitted).

Here, Plaintiff argues she has not yet had the opportunity to conduct merits-based discovery because the parties stipulated and the Court ordered that the parties would conduct discovery in two phases – the first phase dedicated to discovery on the motion for class certification and/or motions for summary judgment with respect to the class certification order and the second phase dedicated to the merits of the claims and defenses. Pl. Opp'n; *see also* Minutes of Scheduling Conference, July 18, 2011 (Dkt. 16). The only support Plaintiff provides for her request to continue Defendant's Motion is two paragraphs in a declaration by Plaintiff's counsel.

In his Declaration, Plaintiff's counsel Larry W. Lee states: "Given the Parties [sic] agreed upon discovery plan, the history of this case, including the stay that was in place up to this point, Plaintiff has not yet been allowed to conduct any sort of merits-based discovery in this matter." Declaration of Larry W. Lee ("Lee Decl.") (Dkt. 138-1) ¶ 18. Lee further declares that: "Specifically, Plaintiff will require merit-based discovery as to the 'remoteness' of Plaintiff's job sites, the number of job applications Defendant receives, the number of qualified candidates who have applied for jobs with Defendant, amongst other things in order to properly oppose Defendant's MSJ." *Id.* ¶ 19.

Although Lee's Declaration identifies a few facts that further discovery could reveal, it does not sufficiently explain *why* those facts are essential to oppose summary judgment. *See Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1100–01 (9th Cir. 2006) (holding plaintiff's Rule 56(d) motion was insufficiently specific because it did not show what facts were sought or how additional discovery would reveal those facts).

Moreover, the Court is not convinced Plaintiff acted diligently in pursing discovery before summary judgment. On October 9, 2012, the Court issued its Class Certification Order. That same day, the Court set new case management dates: the new discovery cut-off date was May 24, 2013 and the new expert discovery cut-off date was July 12, 2013. Final Pre-Trial Conference (Dkt. 76). Avilez therefore had the opportunity to conduct merits-based discovery until February 4, 2013, when the Court stayed "all proceedings in this Court . . . pending the . . . Ninth Circuit's resolution of Defendant's appeal from the District Court's October 9, 2012 Order granting class certification." Order Re: Stipulation to Stay Case ("Stay Order") (Dkt. 103). The stay included "all outstanding discovery and deadlines related to discovery." *Id.* The Stay Order also directed the parties to confer to set new deadlines as to any discovery or briefing on any pending or dispositive motions upon the resolution of the appeal. *Id.*

The Ninth Circuit Memorandum Order came down on March 9, 2015. Avilez has not indicated why she was unable to conduct merits-based discovery after the Ninth Circuit issued its decision. Avilez has also failed to explain why merits discovery could not occur after the Court issued the Modified Order Re: Class Certification on June 24, 2015 (Dkt. 129). Further, on June 22, 2015, the Court held a Status Conference and set a briefing schedule and hearing date for partial summary judgment on the issue of whether there exists a prima facie case for liability for the modified certified classes. *See* Minutes (Dkt. 130). At that Status Conference, counsel for Defendant inquired about including in its forthcoming motion arguments that were unrelated to class certification. *See* Order Re: Motions for Partial Summary Judgment (Dkt. 131). On June 29, 2015, the Court issued an order permitting Defendant to raise additional arguments addressing the sufficiency of Plaintiff's individual claims. *Id.* Plaintiff thus had further notice she should conduct merits-based discovery concerning the arguments Defendant indicated it intended raise in a motion for summary judgment. There is no indication Plaintiff did not have the opportunity to conduct merits-based discovery.

Accordingly, the Court concludes Relief under Rule 56(d) is not warranted both because Plaintiff submitted insufficient declarations to support her request and because she has not acted diligently in pursing discovery before summary judgment.

### B. Plaintiff's Argument Defendant's Motion Is Procedurally Defective

Plaintiff contends Defendant's Motion is improper because it is only directed at Avilez, the class representative. However, Plaintiff cites no authority indicating Defendant is not "allowed" to seek summary judgment as to Plaintiff's individual claims after class certification. Indeed, other courts have permitted, and in some cases granted, summary judgment against individual plaintiffs after class certification. *See, e.g.*, *Kennedy v. Jackson Nat. Life Ins. Co.*, No. C 07-0371 CW, 2010 WL 4123994, at *1 (N.D. Cal. Oct. 6, 2010) (granting summary judgment in favor of defendant against plaintiff as an individual after class certification was granted); *Moreno v. Autozone, Inc.*, No. CV 05-4432 CRB, 2009 WL 3320489, at *1 (N.D. Cal. Oct. 9, 2009) *aff'd*, 410 F. App'x 24 (9th Cir. 2010) (granting motion for summary judgment as to plaintiff's individual claim after granting class certification); *Nguyen*, 2011 WL 6018284, at *1–2 (same).[12]

### C. Plaintiff's Meal Period Claim Under California Labor Code § 226.7 and IWC No. 4-2001

Defendant argues the undisputed evidence shows that Avilez's on-duty meal periods were lawful under the provisions of IWC Wage Order No. 4-2001. Specifically, Defendant argues the elements of the Wage Order are met and thus there was no meal period violation because Avilez agreed in writing to on-duty meal periods and because the nature of her work prevented her from being relieved of all duty.

#### 1. Legal Standard

As set out above, IWC Wage Order No. 4-2001 Section 11 provides:

> (A) No employer shall employ any person for a work period of more than
> five (5) hours without a meal period of not less than 30 minutes, except that
> when a work period of not more than six (6) hours will complete the day's
> work the meal period may be waived by mutual consent of the employer
> and the employee. Unless the employee is relieved of all duty during a 30

---

[12] In addition, the Court reiterates that it expressly gave Defendant permission to raise arguments unrelated to class certification that addressed the sufficiency of the individual Plaintiff's claims. *See* Order Re: Motions for Partial Summary Judgment.

minute meal period, the meal period shall be considered an "on duty" meal
period and counted as time worked. An "on duty" meal period shall be
permitted only when the nature of the work prevents an employee from
being relieved of all duty and when by written agreement between the
parties an on-the-job paid meal period is agreed to. The written agreement
shall state that the employee may, in writing, revoke the agreement at any
time.

The Ninth Circuit concluded that the on-duty meal period exception set out in the wage
order "is a limited alternative to the off-duty meal period requirement, and can only be used
[by] employers in the narrowest of circumstances, based upon the 'nature of the work.'"
*Brewer*, 2014 WL 5877695, at *7 (citing *Abdullah*, 731 F.3d at 959). Looking to California
Division of Labor Standards Enforcement ("DLSE")[13] Opinion Letter 2009.06.09, the Ninth
Circuit further stated, "[c]ritically, [the on-duty meal period] is 'not described or defined as a
*waiver* of an off-duty meal period, but rather as 'a *type* of meal period that can be lawfully
provided only in those circumstances in which the three express conditions set forth in [the
regulation] are satisfied.'" *Abdullah*, 731 F.3d at 959 (quoting DLSE Opinion Letter
2009.06.09 at 8) (second alteration in original).[14]

The employer bears the burden of proving each element of the exception: (1) that "the
nature of the work prevents an employee from being relieved of all duty;" (2) that "an on-the-
job paid meal period is agreed to" by "written agreement between the parties;" and (3) the
written agreement states "the employee, may, in writing, revoke the agreement at any time."
IWC Wage Order No. 4-2001 § 11(A); *see also* DLSE Opinion Letter 2002.06.02 at 7;
*Abdullah*, 731 F.3d at 962. Further, "the showing necessary to establish the 'nature of the work'
exception is a high one." *Abdullah*, 731 F.3d at 962.

---

[13] "The DLSE is the state agency empowered to enforce California's labor laws, including IWC wage orders." *Brinker*, 53
Cal. 4th at 1029 n.11.
[14] As the Ninth Circuit noted, DLSE Opinion Letter 2009.06.09 concerned IWC Wage Order 9-2001 Section 11(C), which
applies to the transportation industry. Section 11(C) contains the same three requirements for any on-duty meal period as
Wage Order No. 4-2001 § 11(A). *Abdullah*, 731 F.3d at 959 n.11.

California state courts, however, "have not addressed the substantive scope of the 'nature of the work' exception." *Abdullah*, 731 F.3d at 958.[15] DLSE has, however, has issued opinion letters addressing when the "nature of the work" exception may apply. *Id.* Although the DLSE opinion letters are "not controlling upon the courts," they do "constitute a body of experienced and informed guidance to which courts and litigants may properly resort for guidance." *Id.* (quoting *Brinker*, 53 Cal. 4th 1029 n.11) (internal quotation marks omitted). In *Abdullah*, the Ninth Circuit therefore looked to the opinion letters "for guidance on what an employer must show to invoke the exception, as well as examples where DLSE has found that it is satisfied." *Id.* at 959. The Ninth Circuit then stated it could "characterize the instances in which DLSE has found that the 'nature of the work' exception applies into two categories: (1) where the work has some particular, external force that requires the employee to be on duty at all times, and (2) where the employee is the sole employee of a particular employer." *Id.* However, the Ninth Circuit made clear that those are not the only circumstances under which the "nature of the work" exception may apply. *Id.* at 959 n.12:

> To the contrary, DLSE has laid out the following non-exhaustive factors that should be considered when deciding whether the 'nature of the work exception applies to a specific job: '(1) [T]the type of work, (2) the availability of other employees to provide relief to an employee during a meal period, (3) the potential consequences to the employer if the employee is relieved of all duty, (4) the ability of the employer to anticipate and mitigate these consequences such as by scheduling the work in a manner that would allow the employee to take an off-duty meal period, and (5) whether the work product or process will be destroyed or damaged by relieving the employee of all duty.'

*Id.* (quoting DLSE Opinion Letter 2009.06.09 at 7); *see also United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co.*, CV 08-2068 PSG (FFMx), 2009 WL 734028, at *6 n.4 (C.D. Cal. Mar. 16,

---

[15] Indeed, most cases that analyze meal periods do so in the context of class certification.

2009) ("*ConocoPhillips*") (citing DLSE Opinion Letter 2002.09.04 with approval for providing "factors [that] should be considered when determining whether the nature of the work permits an on-duty meal period.").

### 2. Discussion

First, the Court will address whether Defendant has met its burden of establishing that "an on-the-job paid meal period is agreed to" by "written agreement between the parties;" and that the written agreement states "the employee, may, in writing, revoke the agreement at any time." Then, the Court will turn to whether Defendant has satisfied the "nature of the work" prong of the statutory exemption with respect to each of Avilez's relevant posts during her employment with SCIS. *See* Wage Order No. 4-2001; *see also Bradescu v. Hillstone Rest. Grp., Inc.*, No. SACV 13-1289-GW RZX, 2014 WL 5312546, at *5 (C.D. Cal. Sept. 18, 2014) *order confirmed*, No. SACV 13-1289-GW RZX, 2014 WL 5312574 (C.D. Cal. Oct. 10, 2014) ("A written agreement *is* required for an 'on-duty meal period' to apply, where the nature of the work prevents an employee from being relieved of all duty.").[16]

The parties do not dispute that: (1) Avilez signed two written agreements for on-duty meal periods, both dated May 13, 2008, (2) that those written agreements stated that Avilez "may revoke this agreement, in writing, at any time, without penalty," (3) that Avilez did not revoke her on-duty meal period agreements, and (4) that Avilez took unpaid on-duty meal periods during the relevant time period of her employment with SCIS. Def. SUF Nos. 6, 7, 8, 9.[17] Thus, Defendant has satisfied two of the three prongs of the statutory exception.

The dispute therefore turns on whether Defendant has satisfied the "nature of the work" prong of the exception to the off-duty meal period requirement. As the Ninth Circuit did in *Abdullah*, the Court begins by noting that,

---

[16] *Bradescu* discusses the exception to the off-duty meal period requirement in IWC Wage Order No. 5-2001 Section 11(A). The language of that provision is the same as IWC Wage Order No. 4-2001 Section 11(A).

[17] As noted above, in response to Defendant's Statement of Uncontroverted Facts, Plaintiff does argue the on-duty meal period agreements are illegal and against public policy because they deny "legally mandated off-duty and unfettered meal periods." *See* Pl. Response to Def. SUF (Dkt. 138-6) Nos. 6, 7, 8, 9. However, Plaintiff does not raise these arguments in her Opposition. Moreover, meal break agreements, such as the one at issue here, are "specifically authorized by the IWC;" indeed, "the IWC has specifically endorsed the concept of on-duty meal agreements." *Laidlaw*, 2009 WL 2448430, at *5 (discussing whether meal break agreements signed by drivers were substantively unconscionable).

> [i]n determining whether the 'nature of the work' prevents an employee from being relieved of all duty, [DLSE] starts with the premise that the general requirement for an off-duty meal period is remedial in nature, and any exception to that general requirement must be narrowly construed, so as to avoid frustrating the remedial purpose of the regulation.

*Abdullah*, 731 F.3d at 959 (quoting DLSE Opinion Letter 2002.09.04 at 2) (internal quotation marks omitted). In considering whether Defendant has proved the nature of the work prevents an employee from being relieved of all duty, the Court also will keep in mind the non-exhaustive factors set out in DLSE opinion letters.

### a. Avilez's Work at the Pacific Place/Northrop Grumman Site

Defendant argues the nature of Avilez's work at the Pacific Place/Northrup Grumman site prevented her from being relieved of all duty to take an off-duty meal period and therefore that Defendant provided lawful on-duty meal periods. The Court disagrees. Defendant has failed to establish there is no triable issue of material fact as to whether the nature of the work prevented Avilez from being relieved of all duty. The Court will address Defendant's specific arguments about why it satisfies the nature of the work exception in turn.

First, Defendant asserts that, although there were two guards at the Pacific Place/Northrop Grumman site, each guard had different responsibilities and the two positions could not relieve each other because "one is not trained to do the other." Def. Mot at 18. Although Avilez was not specifically trained to perform the duties of the other guard, Declaration of Sherry B. Shavit ("Shavit Decl.") (Dkt. 136-2) Ex. A ("Avilez Deposition") at 101:16–19, Defendant has actually provided evidence suggesting that Avilez and the other security guard working the same shift had some of the same – or at least similar – duties. Avilez's duties at the Pacific Place/Northrop Grumman site included: patrolling the inside and outside of the building and the parking lot, checking the doors and alarm system, answering the phone at the security desk, monitoring security cameras, and responding to alarms and emergencies. Def. SUF No. 14. The other security officer on duty during the same shift as Avilez patrolled a different part of the site than Avilez did, but still patrolled the same building.

*Id.* No. 15. In addition, one guard was required to be at the desk at all times; thus, while one security guard was on patrol, the other was at the desk. *Id.* No. 17. In other words, both guards' duties included patrolling different parts of the same building. Further, based on Defendant's evidence, it appears that both Avilez and the other security guard worked at the same desk (at different times). There is no indication each security job performed different tasks at the desk. Further, Defendant has not provided sufficient evidence that each guard's duties require different qualifications or levels of skill and therefore that the security guards at this site could not be interchangeable. Thus, Defendant's arguments about lack of specific training do not suggest the very *nature* of Avilez's work as a security officer *prevents* Avilez from being relieved of all duty. Indeed, even if Avilez's duties were meaningfully distinct from those of her co-worker, the reason why she could not take an off-duty meal period was because of SCIS's particular staffing and training choices. *Cf. Abdullah*, 731 F.3d at 963 ("These duties are undoubtedly distinct from one another, but the only reason any of them 'prevent' the employee from taking a meal period is because USSA has chosen to adopt a single-guard staffing model.")

Defendant also argues that even if the guards were trained to do the each other's work, "the security of the site would be compromised while one of the posts is vacated." Def. Mot. at 18. Further, most of Defendant's clients do not permit posts at their sites to be abandoned. However, the reason why one of the posts would be vacated during a meal break is due to SCIS's staffing model. Indeed, Michael Kemppainen ("Kemppainen"), SCIS's former Vice President for the West Area, testified that SCIS would "bring . . . on" another security guard "if it's in the contract and the customer pays;" in other words, "[it] comes down to the contract issue." Lee Decl. Ex. A ("Kemppainen Deposition") at 61:6–11. In other words, another security guard is not available to cover for off-duty meal periods because it "would be an additional expense to our customer. *Id.* at 60:15–20.

Defendant argues the Wage Order and the Labor Code do not *require* an employer to hire more staff to satisfy the nature of the work exception. However, in *Abdullah*, the Ninth Circuit indicated that the employer's staffing model and staffing choices are relevant to the

merits determination of whether an employer satisfies the narrow nature of the work defense. *See Abdullah*, 731 F.3d at 962–63 ("[W]e conclude the *merits inquiry* will turn on whether USSA is permitted to adopt a single-guard staffing model that does not allow for off-duty meal periods – namely, whether it can invoke a 'nature of the work' defense on a class-wide basis, *where the need for on-duty meal periods results from its own staffing decisions*.") (emphasis added).[18] Thus, Defendant has failed to establish there is no triable issue of material fact as to whether Avilez's security guard post would quality for the nature of the work exception absent the staffing model in place at the Pacific Place/Northrop Grumman site. Indeed, besides pointing to the contracts with its clients, Defendant has not sufficiently explained why it would not be possible to have a relief security guard available to cover Plaintiff's duties while she took an off-duty meal period. *ConocoPhillips*, 2009 WL 734028, at *6 ("Defendant contends that [the nature of the work] requirement is satisfied because the nature of Plaintiffs' work requires them to be on the site during their meal periods due to the potential for emergencies to arise. However, Defendant has not explained why it would not be possible to have a relief operator available to cover Plaintiffs' stations while they took a meal period.").[19]

Accordingly, the Court concludes Defendant has not met its burden of establishing the nature of the work requirement with respect to Avilez's at the Pacific Place/Northrop Grumman site.

### b. Avilez's Work at the Vought Aircraft Industries, Inc. Site

As discussed above, Avilez worked at two different posts at the Vought site, both of which were on the graveyard shift. In her first post, she and another security guard rotated patrol and front gate responsibilities. Defendant emphasizes that if Avilez were to leave the site

---

[18] During oral argument, Defendant emphasized *Abdullah* was inapposite because, unlike in that case, there is no single-guard staffing model at issue here. The Court concludes Defendant's reading of *Abdullah* is unduly narrow. The defendant in *Abdullah* adopted a single-guard staffing model and therefore the Ninth Circuit focused on whether the defendant would be permitted to adopt that particular model. However, the Ninth Circuit also suggested that any staffing decision or staffing model may be relevant to the merits inquiry of whether an employer satisfies the nature of the work defense. Indeed, as noted above, the Ninth Circuit stated the "merits inquiry will turn on" whether the employer "can invoke a 'nature of the work' defense on a class-wide basis, *where the need for on-duty meal periods results from its own staffing decisions*." *Abdullah*, 731 F.3d at 962–63 (emphasis added).

[19] Defendant also has not offered sufficient evidence to support its assertion that it is "not feasible to hire a third security guard to work for one hour during a graveyard shift five days per week, or for the employer to incur the time and expense of training that guard to cover for more than one security guard position." Def. Mot. at 19.

for 30-minute meal periods, the other guard would either have to work at the gate and cease patrols or vice versa. Def. Mot. at 21. The security of the site therefore would be compromised in some way; for instance, if Avilez left the site, she would be unavailable to respond to emergencies. *Id.* In her second post at Vought, the client closed the gate for most of the night, and therefore there were only two guard posts. *Id.* at 22. Defendant raises the same argument with respect to this post; if she were to leave the site, no patrols would occur, and she would be unavailable to respond to emergencies, thereby compromising the security of the site. *Id.*

For the same reasons as discussed in the previous section, the Court concludes Defendant has failed to establish there is no triable issue of material fact as to whether Avilez's security guard posts at the Vought site would quality for the nature of the work exception absent the staffing model in place. Nor has Defendant provided sufficient evidence establishing there is no genuine dispute as to why it would not be possible to have a relief security guard available to cover Plaintiff's duties while she took an off-duty meal period. Indeed, in his deposition, Kemppainen actually suggests that SCIS' staffing decisions – rather than the nature of the work itself – are what create the problem of an abandoned post and therefore the potential need for an on-duty meal break. Kemppainen stated:

> You don't have enough personnel to be able to abandon a post for 30 minutes. . . . [I]f you have a two-person post, which is very common by the way, but you need to have those posts manned typically during the course of the entire eight hours, if you have if you take the patrol operator away for 30 minutes and have him or her sit here, you have a security breach out in the perimeter. Vice versa, if you were to remove this person from this posting and break the patrol officer for 30 minutes[,] who's going to issue visitor badges and see who's coming in or out?

Kemppainen Depo. at 67:16–68:9. In other words, Kemppainen indicates that having a "two-person post" – a staffing decision, not the nature of the work – is why the need for on-duty meal periods arises. *See Abdullah*, 731 F.3d at 963.

In addition, the Court is not convinced Defendant is unable to anticipate and mitigate the potential consequences to the employer if the employee is relieved of all duty. Indeed, Defendant has shown it can anticipate potential consequences if the employee is relieved of all duty: if Avilez and the other guards abandon their posts for an off-duty meal break, the security of the site will be compromised. Defendant states it is unable to mitigate such consequences because "it is not possible to schedule the work in a matter that would allow the employee to take an off-duty meal period because each security post has to be manned at all times." Def. Mot. at 24. However, as discussed above, the post abandonment issue arises as a result of Defendant's staffing decisions. Defendant has not provided sufficient evidence to show it is unable to mitigate this problem by scheduling another security guard to monitor the abandoned post while another security guard takes an off-duty meal break.

Based on the evidence before it, and keeping in mind that any exception to the general rule requiring an off-duty meal period "must be narrowly construed," *Abdullah*, 731 F.3d at 959 (quoting DLSE Opinion Letter 2002.09.04 at 2) (internal quotation marks omitted), the Court cannot conclude Defendant has proved that the *nature* of Avilez's work at the Vought site and the Pacific Place/Northrop Grumman site *prevented* Avilez from being relieved of all duty. Accordingly, Defendant's Motion for Summary Judgment as to Avilez's meal period claim is DENIED.

### D. Plaintiff's Labor Code § 226 Claim and Business and Professions Code § 17200 Claim

As discussed above, Plaintiff's Labor Code Section 226 claim is derivative of her meal period claim. Plaintiff's Business and Professions Code Section 17200 claim is also derivative of her meal period claim. *See ConocoPhillips*, 2009 WL 734028, at *6; *see Dilts*, 267 F.R.D. at 640; *White*, 497 F. Supp. 2d at 1089–90.[20] Defendant moves for summary judgment on these causes of action, arguing only that because they are derivative of Plaintiff's meal period claims they also fail as a matter of law. Because the Court has denied Defendant's Motion as to Plaintiff's meal period claims, as discussed above, the Court DENIES summary judgment as to

---

[20] The parties do not dispute this claim is derivative of Plaintiff's meal period claim.

Plaintiff's Labor Code Section 226 claim and Business and Professions Code Section 17200 claim.

### E. Plaintiff's PAGA Claim

Defendant argues Avilez's claim for civil penalties under the PAGA fails because Avilez failed to properly exhaust the mandatory administrative remedies prior to pursuing civil penalties under the PAGA. In particular, Defendant argues Avilez's notice to the Labor and Workforce Development Agency ("LWDA") failed to satisfy the requirements of Labor Code Section 2699.3. The Court must therefore determine whether Defendant is entitled to summary judgment as to Avilez's PAGA claim.

### 1. Sufficiency of Plaintiff's PAGA Letter

The PAGA permits an employee to bring an action against an employer to recover civil penalties for violations of the California Labor Code. *Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1056 (9th Cir. 2015) (citing Cal. Lab. Code § 2699(a)). "First, however, the employee must give 'written notice by certified mail to the Labor and Workforce Development Agency and the employer of the specific provisions of [the California Labor Code] alleged to have been violated, including the facts and theories to support the alleged violation.'" *Id.* (quoting Cal. Lab. Code § 2699.3(a)(1)).[21] In 2014, the California Supreme Court reiterated the notice to the LWDA "must describe facts and theories supporting the violation." *Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348, 380, 327 P.3d 129, 146 (2014), *cert. denied*, 135 S. Ct. 1155, 190 L. Ed. 2d 911 (2015) (emphasis added).

Avilez's February 24, 2011 letter to the Labor and Workforce Development Agency ("LWDA") states the following:

> Pursuant to California Labor Code § 2699.3, Ms [sic] Catherine E. Avilez, a former employee of Pinkerton Government Services, Inc. d.b.a. HG Communication ("Pinkerton") hereby provide [sic] notice of certain labor

---

[21] In full, Labor Code § 2699.3(a)(1) provides:

    (a)  A civil action by an aggrieved employee pursuant to subdivision (a) or (f) alleging a violation of any provision listed in Section 2699.5 shall commence only after the following requirements have been met:

        (1) The aggrieved employee or representative shall give written notice by certified mail to the Labor and Workforce Development Agency and the employer of the specific provisions of this code alleged to have been violated, including the facts and theories to support the alleged violation.

code violations by such companies. More specifically, it is alleged that Pinkerton:

. . .

2. Violated Labor Code § 226.7 by failing to pay its employees with missed meal break premiums.

Shavit Decl. Ex. C ("Avilez LWDA Letter").

Defendant argues Avilez's LWDA letter is insufficient because it fails to set forth any facts and theories to support Avilez's allegation. Plaintiff responds that her letter is sufficient, including because it did not simply state a legal conclusion but rather "went a step beyond" a legal conclusion and specifically alleged why Labor Code Section 226.7 was violated (because Defendant failed to pay the missed meal break premiums). Pl. Opp'n at 18. The Court agrees with Defendant.

In *Alcantar*, the Ninth Circuit found the plaintiff's letter was an insufficient "series of legal conclusions." *Alcantar*, 800 F.3d at 1057. In his letter, the plaintiff in *Alcantar* contended, in addition to a number of other Labor Code violations, that the employer "(6) failed to provide off-duty meal periods and to pay compensation for work without off-duty meal periods to its California employees in violation of California Labor Code sections 226.7 and 512, and applicable Industrial Welfare Commission orders." *Id.* The Ninth Circuit concluded,

> [t]he only facts or theories that could be read into this letter are those implied by the claimed violations of the specific sections of the California Labor Code – that Hobart failed to pay wages for time worked, failed to pay overtime wages for overtime worked, failed to include the extra compensation required by § 1194 in the regular rate of pay when computing overtime compensation, and so on.

*Id.* The Court concludes Avilez's LWDA letter is strikingly similar to the letter the Ninth Circuit rejected in *Alcantar*; Avilez's letter contains a legal conclusion "with no factual allegations or theories of liability to support [it]." *Id.*[22] Indeed, Avilez's letter "makes no

---

[22] The district court in *Alcantar* stated, "the closest that Plaintiff comes to making a factual allegation in the letter is to allege a failure 'to provide off-duty meal periods and to pay compensation for work without off-duty meal periods to its California

attempt to describe any of Defendant[']s] allegedly unlawful policies or practices." *Ovieda v. Sodexo Operations, LLC*, No. CV 12-1750-GHK SSX, 2013 WL 3887873, at *4 (C.D. Cal. July 3, 2013) (emphasis added). Avilez's letter is thus "insufficient to allow the [LWDA] to intelligently assess the seriousness of the alleged violations," and fails to "provide sufficient information to permit the employer to determine what policies and practices are being complained of so as to know whether to fold or fight." *Id.*[23]

For the foregoing reasons, the Court finds Plaintiff's LWDA letter fails to satisfy the requirements of Labor Code Section 2699.3(a)(1). *See Ovieda*, 2013 WL 3887873, at *4 ("The notice contains no facts specific to Ovieda's principal meal and rest break claim and unpaid wages claim and no information about what Defendants' allegedly illegal policy and practices are. Accordingly, we conclude that Ovieda's notice does not include the requisite 'facts and theories' under § 2699.3(a).") (footnote omitted); *Singletary v. Teavana Corp.*, 2014 U.S. Dist. LEXIS 62073, *9 (N.D. Cal. May 2, 2014) ("Here, the letters clearly failed to provide 'any factual allegations whatsoever,' so under Ninth Circuit law, they do not provide adequate notice.").

## 2. Amendment of the PAGA Notice

Without citing any authority, Plaintiff requests that, in the event we find her PAGA notice insufficient, we should give her leave to submit an amended notice to LWDA. In *Ovieda*, the court rejected such a request. The court stated that, "in each of the cases where the court concluded that the plaintiff failed to adequately exhaust because the notice was factually

---

employees.'" *Alcantar v. Hobart Serv.*, No. ED CV 11-1600 PSG, 2013 WL 228501, at *4 (C.D. Cal. Jan. 22, 2013), *aff'd*, 800 F.3d 1047, 1056 (9th Cir. 2015). The district court then concluded there was no "meaningful difference" between that allegation and the allegation in the unpublished Ninth Circuit decision in *Archila v. KFC U.S. Properties, Inc.*, 420 F. App'x 667 (9th Cir. 2011): "KFC's practice of denying rest periods and lunch periods to these workers in violation of IWC Wage Order 10." *Alcantar*, 2013 WL 228501, at *4 (internal quotation marks omitted). Indeed, the letters at issue in *Alcantar* and *Archila* "[b]oth vaguely list ways in which the California Labor Code provisions were violated and fail to allege specific facts. *Id.* The same is true of Avilez's letter.

[23] The Court disagrees that Avilez's letter sets out a level of detail analogous to what the court found sufficient in *Gonzalez v. Millard Mall Servs., Inc.*, No. 09CV2076-AJB WVG, 2012 WL 3629056 (S.D. Cal. Aug. 21, 2012). In *Gonzalez*, the plaintiff stated the labor code violation and that, "[i]n violation of these statutory requirements, the Defendants issued pay checks out of a bank in Illinois and the address of the bank does not appear on the checks." *Id.* at *3, 6. Here, in contrast, there is no analogous level of detail; Plaintiff's letter only states that Defendant failed to pay employees with missed meal break premiums.

insufficient, no court permitted the plaintiff to submit an amended notice." *Ovieda*, 2013 WL 3887873, at *5 (citing *Soto v. Castlerock Farming & Transp. Inc.*, No. CIV-F-09-0701 AWI, 2012 WL 1292519 (E.D. Cal. Apr. 16, 2012)). And, "more importantly, allowing an amended notice to be submitted after the civil action has already been filed defeats the very purpose of the exhaustion requirement, which is to give the LWDA the opportunity to make an informed decision about whether to pursue the matter itself." *Id.* The *Ovieda* court therefore concluded its "independent research shows that the only circumstance under which a PAGA notice is allowed to be submitted after the initiation of an action is when the PAGA claim was not initially asserted." *Id.* (citing *Lopez v. Lassen Dairy, Inc.*, 2008 WL 4657740 (E.D. Cal. Oct. 20, 2008); *Harris v. Vector Marketing Corp.*, 2010 WL 56179 (N.D. Cal. Jan. 5, 2010)); *cf. Mazzei v. Regal Entm't Grp.*, No. SACV 13-1284-DOC, 2013 WL 6633079, at *5 (C.D. Cal. (Dec. 13, 2013) ("PAGA's administrative exhaustion requirements are the functional equivalent of the 'condition precedent discussed in *Wilson* [*v. People By and Through Dept. of Public Works*, 76 Cal. Rptr. 906 (Cal. Ct. App. 1989)]. A later amendment cannot retroactively bestow administrative compliance that did not exist when the plaintiff filed the initial complaint."). Because such a circumstance is not present here, Plaintiff's request to submit an amended notice is DENIED.

Accordingly, Defendant's Motion for Summary Judgment is GRANTED as to Plaintiff's failure to exhaust administrative remedies.[24]

## VI.    Disposition

For the foregoing reasons, the Court:

- DENIES Plaintiff's Motion for Partial Summary Judgment.

---

[24] Without citing any authority, Plaintiff argues Defendant has waived its right to challenge her LWDA notice. The Court finds Defendant did not waive this affirmative defense. In *Alcantar*, the district court found that "because Defendants pleaded the failure to exhaust administrative remedies as to PAGA claims as an affirmative defense, they did not waive the defense." *Alcantar*, 2013 WL 228501, at *5. The Ninth Circuit concluded the district court did not abuse its discretion in finding the defense was preserved because "Hobart and ITW asserted in their responsive pleading that Alcantar 'failed to satisfy the jurisdictional prerequisites mandated by California Labor Code Sections 2698, *et seq.*'" *Alcantar*, 800 F.3d at 1056 n.3. Similarly, in its First Amended Answer, Defendant states: "Plaintiff's claim under the Private Attorneys General Act, <u>Labor Code</u> §§ 2698 *et seq.* ("PAGA"), is barred to the extent Plaintiff has failed to meet the jurisdictional requirements set forth in <u>Labor Code</u> § 2699.3." First Amended Answer (Dkt. 134) ¶ 82. Accordingly, the Court concludes Defendant did not waive its right to challenge Avilez's LWDA notice. *See Alcantar*, 2013 WL 228501, at *5.

- GRANTS IN PART AND DENIES IN PART Defendant's Motion for Summary Judgment and/or Partial Summary Judgment. Defendant's Motion is GRANTED only as to Avilez's PAGA claim.

DATED:

_David O. Carter_

DAVID O. CARTER
UNITED STATES DISTRICT JUDGE